Judge Nicholas
delivered the-Opinion of the Court;
This writ of error is prosecuted by Joseph W. Violett, to a judgment in ejectment,-rendered against him, in favor o.f Joseph Violett, as lessor of the plaintiff.
Tt appeared in proof on the trial, that John Violett, having the title to a tract of land, sold and conveyed it to his son, Joseph W. Violett, who took possession, and has held it ever since, claiming it as his own.
Subsequent to this sale -and conveyance, the execu-. tion of a judgment creditor of John Violett was levied on the land, as his property, and it was sold and conveyed by the sheriff, to the lessor of the plaintiff; whojimmediately after this sale, and before the sheriff had made him a conveyance, gave a bond, binding himself to convey the land to John Violett, so soon as the sheriff made him a deed.
After the death of John Violett, his son, Talbott Violelt, purchased out the interest of all the other heirs of his father (except the defendant Joseph W.) in this bond, and, with thejr assent and that of the lessor of the plaintiff, instituted this suit for the recovery of the *324 land, for his (Talbott Violett’s) use and benefit, and to be conducted'at his costs and charges.
A grantor may make a deed with an intent to defraud creditors : yetjifitis 'upon a fair bona fide consideration, to one who had no participation in, or knowledge of, the grantor’s fraudulent intent, it will be good and valid.
5' There was also, testimony conducing to prove, lhafc the conveyance from John to Joseph W. Violett, was made by John for the purpose of defrauding his creditors ; that the defendant knew of and participated in the fraud, and that there was no sufficient, valuable-consideration therefor'.
The defendant introduced evidence conducing to prove the converse of all this: that is, that the conveyance was bona fide, and without fraud, and that if there was any fraudulent intent on the part of John, he the. defendant was ignorant thereof, and did not participate, therein.
The defendant moved the court to instruct the jury, that if they believed John sold to Joseph W. for the purpose of defrauding his creditors, yet if they believed that Joseph W. knew nothing of the fraud, and did not participate in if, that then the deed from John to Joseph W.-was not void on account of the fraudulent intention of John. This instruction the court refused to give; and, at the instance of the plaintiff, instructed the jury, that if they believed the deed from John to Joseph W. was made by John, with a view to defraud his creditors, the possession of Joseph W. under said deed,- was not such an adverse possession, as to enable him to protect himself under the act against champerty and maintenance — whether Joseph W. at the time of his purchase and deed from John, knew of the fraudulent intention of John and participated in the same, or not.
The instruction as asked by the plaintiff, may not be such as the court was bound to give ; because it is not based upon the qualification, that the jury should believe, that Joseph W. had paid, or agreed to pay, a fair and bona fide consideration' for the land. But as the instruction given contains no qualification, that he had not so paid, or agreed to pay, refusing the one, and giving the other, was tantamount to an instruction, that, though he had paid, or agreed to pay, a fair and bona fide consideration, the deed was nevertheless void, if *325 made with a fraudulent intent on the part of the grantor, though the grantee had no knowledge of that intent, nor participated therein. The reverse cf this proposition we deem to be the law It would be a most literal, rigorous and unwarrantable construction, of the statute against fraudulent conveyances, to make fair and bona fide purchasers the victims of an undivulged or unascertained fraudident intention on the part of their vendors. Where a fair equivalent is received by a debtor for the sale and transfer of his property, he is not disabling himself thereby from the payment of his debts, and in legal estimation no prejudice can thence ensue to his creditors. The protection of bona fide purchasers is as much the object of the act, as the protection of creditors ; and it would not.be consonant with its spirit or policy, to make either the victims of an over anxiety to protect the others.
The title of the defendant in an ex’on, to land in the adverse possession of a stranger, may be sold by the sheriff. — l Dana, 2il.— But, to sales by a purchaser under the ex'on,. the champerty act applies: and be can neither convey thel and, while the adversepossession continues, nor make any eharn perty contract eoncerning it.
The court also refused to instruct the jury, that the defendant could protect himself from a recovery, under the champerty act, except with a qualification, that they should believe the conveyance from John, to Joseph W. Violett was free from fraud.
it may be, that the defendant in an execution, who is himself in possession, does not hold adversely to the purchaser thereunder, within the meaning of the champerty act, so as to preclude the latter from selling to a third person, before he has recovered the possession. But his is not precisely the attitude of a fraudulent vendee, who is in possession, holding the property as his own. Though the law allows the sale of property so held, under execution, yet we do not- see the process b} which such a holding can be converted into an amicable possession, as between the purchaser under execution, and the fraudulent vendee. ' It may be true, that the fraudulent vendee stands so far in the shoes of the defendant in-the execution, that, after the establishment of the fraud, he would not be permitted to protect himself against the purchaser, by the exhibition of an outstanding paramount title ; but still there is the preliminary question, whether he be a fraudulent vendee or not, *326 which is the very gist of the litigation as between him and the purchaser. We perceive no reason, either of necessity or policy, for allowing the purchaser to vend the right to make this litigation, or to make a champertous contract concerning it. Neither his interests, nor those of creditors, necessarily require- that lie should be permitted to make such sale or contract. It is sufficient that he himself is allowed to litigate the question with the vendee, who cannot well be deemed to bold otherwise than adversarily towards him.
Tho’ it may be unconstitutional to declare the title of the parties to a champertous contract, forfeited to the state, for the benefit o fan adverse occupant : yet there cap be no doubt of the power of the legislature to authorize an investigation of the circumstances under which a suit is commenced and carried on; and to ascertain for whose benefit it really is, and to withhold the right of recove- , ry, where it appears to befoun ded on a champerty contract.
Such being the character of the defendant’s- possession, the contracts and arrangements between Talbott Violett, his co-heirs' and the lessor of the plaintiff, for the institution of this suit, and carrying it on at his costs and charges, for his benefit, come strictly within the provisions of the- second section of the champerty act of 1824 ; and if made out to the satisfaction of the jury, must preclude any recovery in this action. For though it may not lie within the legislative competency,, to forfeit the right and title of the parties to the champertous contract, and vest it in the commonwealth, for the benefit of the defendant, in the manner contemplated by that act, still, it may have been strictly within the legislative power, to declare, as is done in the second and third sections, that no recovery should be had under such circumstances. We cannot doubt the power of the legislature, to authorize the investigation of the fact, for whose benefit, and under what circumstances, the suit is really prosecuted, and when ascertained to be under a champertous contract in violation of law, to refuse redress. If it be competent for the legislature to prohibit the vending of pretended titles., or the making of champertous contracts concerning them, which no one would controvert, it surely can refuse the-aid of our courts of justice, in carrying into effect such sales and contracts, for the benefit of the parties to them. It is unnecessary, in this case, to determine whether the fact of Joseph Violett having made the champertous contract with Talbott Violett, for the institution and prosecution of this suit, has so far vitiated his title, as to bar a recave *327 ry thereon, in any suit, hereafter instituted, untainted with such illegal arrangement. It may constitute a question worthy of consideration, whether the legislature could, by any mere act of its own, forfeit the vendor’s right of suing on his title, for his attempt to sell it, or for a champerty contract concerning it, in violation of law. But we do not think there can be even plausible ground for doubting the legislative power to deny the aid of our courts of justice to champertors, in effectuating their champertous agreements, whether suing in their own names, or in those of others for their benefit. They derive no right or interest under such agreement, that can be deemed worthy of the constitutional safeguard and protection. They, in truth,.acquire no right or interest whatever. Their efforts to do so are merely abortive. The law renders all such agreements utterly-null and void. It would illy become the violators of' the law, to appeal to the law for its protection in the very act of its violation. If the vendor, or holder of the title, who has made a contract concerning it, in violation of the second section of the act, has any remaining interest left in him, that can he legally asserted in the prosecution of a suit for its recovery, it must be in a suit prosecuted by himself, at his own proper costs and charges, and without any taint of a champertous bargain with a third person.
Judgment reversed, with costs, and cause remanded with instructions for a new trial and further proceedings consistent herewith.