Judge Ewing
delivered the Opinion of the Court-.
Paxton’s heirs, claiming under a patent for one thousand acres of land, issued by the Commonwealth of Virginia to Thomas Paxton, bearing date the 1st day of March, 1784, brought an action of ejectment against John Smith and Robert Elliston, tenants in possession-, who claimed a part of the thousand acres, under and by virtue of a patent for three thousand acres, issued by said Commonwealth to John Cobb, bearing date the 2d day of May, 1786, and recovered a judgment against them.
The value of the improvements were afterwards assessed, and paid for by the plaintiffs, and the possession yielded up to them.
Afterwards Smith and Elliston brought this action of ejectment against James Paxton and his tenant in possession, for the recovery of the same land. And having introduced proof tending to show that, the Paxtons had made a champertous contract with one Matthew Davidson, in the former suit, whereby they agreed to give him the one half of said land, in case of success, to prosecute said suit at his own costs, they moved the Court, in substance, to instruct the jury to find for the *392 plaintiffs on tiiis ground, if they believed that such contract was made. The Court overruled the instruction; and a verdict being found for the defendants, and a judgment rendered thereon, the plaintiffs have brought the case to this Court.
The object and effect of the 2d sec. of the champerty act of ’24, is to enable an occupant to defend his possession against adverse oiaims;and the forfeiture of title, to “enure to the benefit of the person in possession.” for a violation ofthat section, is for purposes of defence only, and does not vest him with a title whereby he can assail the titles of others. lie cannot, as pWf\ maintain any suit founded upon the titleso “enured” to him; nor can he avail himself of such forfeiture to regain a posses sionfrom which he has been ousted.
The heirs of a patentee brought ejectmentagainst tenants holding under a junior grant; recovered a judg’t, and obtained the posRession. The tenants thus ousted, afterwards discovered, that the suit against them had been commenced and prosecuted in pursuance of a champerty contract; and thereupon, bro’t this eject, relying upon their junior title, and that of their adversaries supposed to have been forfeited to the com’th and to have enured to their benefit, in consequence of the champerty contract, and the act of *24. But held, that, however beneficial the provisions of the act might have been to them as defendants in possession, it gives them no rights, & is in no wise available to them, as pltf’s, seeking to recover tlie land from others.
*392 A solution of the only question involved in this record, depends upon, the construction of the second section of the “act to revive and amend the champerty and main- “ tenance law, and more effectually to secure the bona “ fide uccupants of land within this Commonwealth,” approved January 7th, 1824; which section is in the following words:—
“It shall not be lawful for any person or persons, to “ contract, or undertake to recover, or carry on any suit “ for the recovery of any such pretended right or title “ to land as aforesaid, of which adverse possession is held “ under conflicting title, as aforesaid, for or in consid- “ eration to have part or profit thereof; and the parties “ to such contract shall forfeit all right, title, interest or “ claim in or to the land claimed under such pretended “ right or title, and all right to maintain any action or “ suit at law or equity, upon such pretended right or title, “ and such right, title or claim shall vest in the com- “ monwealth, and enure to the benefit of the person in pos- “ session, without office found.',,
The question occurs how far, or to what extent, was the title of the adversary claimant, intended by the act to be forfeited, and to enure to the benefit of the possessor.
Was it intended to vest in him a fee simple title, and arm him with the means to assault the possession of all others? Or did it only intend to furnish him with the means of defence, as the possessor and defendant, against the out-standing adversary claim in the hands of a plaintiff?
We are constrained to believe, from a minute examination of the above .section, in connection with the,, whole act, as well as the preamble, that, the latter was the only object of the Legislature, and is the proper construction of the section.
If not, to what extent is the title of the adversary claimant forfeited and vested in the occupant? Is his *393 whole title vested, and to the extent of the whole tract claimed by him?
If so, if A be in possession of one hundred acres, and B have an adverse title to one thousand acres, covering the title of A, the whole one thousand would enure to the benefit of, and the fee simple title be vested in, A, and he would, by virtue thereof, be enabled to assail the possession of others, who might afterwards, under a third title, acquire the possession of any portion of the land covered by the thousand acres, though out-side of the bounds of his one hundred acres.
Or if A, being in possession of one hundred acres at the time of the forfeiture,-should abandon the possession, and C, claiming under a senior patent should afterwards obtain the peaceable possession of the same place; A, b.y virtue of his title to the forfeited thousand acres of B, it being senior to either, would have a right to attack the possession of C, and drive him and his family from their peaceable occupancy, when he could not be disturbed by the title, in the hands of B, by reason of its forfeiture.
If this be the construction of the section, the Legislature have evidently missed their aim, and instead of affording a guard against outstanding, dormant, adversary titles, have converted them into weapons of offence, whereby the peaceful occupancy of the husbandman, may be successfully assailed, and his family unhoused.
Such construction would bo certainly repugnant to the evident tenor of the whole act. The whole statute contemplates a protection to the occupant, as a defendant, in a controversy with a plaintiff who is seeking, as such, to disturb his possession.
Hence it is provided, in the third section, “that the “ person or persons according to the provisions of the “ first and second sections of this act” &c. “may show or “ plead any contract or agreement made in violation of “ the second section of this act, in bar of any action or “ suit, or claim founded thereon. And the better to “ enable the defendant or defendants in any such suit to “ avail himself of the benefit of this act, it shall be law- “ ful for such defendant or defendants to bring the parties *394 u to such sale or purchase” before a chancellor, and compel á discovery on oath, &c.
The Legislature eorara^sshainjo deemed vicious, and withhold all 3ogal remedy upon them. An act which enables a def’t to shield and protect himself from recovery on a contract so denounced,(as the champerty act of ’24—con-strued as a mere protection to defendants,) is not unconstitutional ■
*394 In thé fourth section it is provided that, “neither party to any c°htraet made in violation of the true intent and meaning of the second section of this act, shall have any right of action or suit thereon.
From which it appears that,- while the Legislature was vigilant in prescribing the form, and providing the mode# by which the defendant, as such—the possessor, might avail himself of the defence afforded by the' statute in bar of the suit or action of the adversary claimant, no provision whatever is made, to' enable him tó avail himself of its provisions, in the prosecution of a suit. And node of the’ guai’ds provided by the statute are made to apply to a plaintiff.
And while the fourth section inhibits aify right of action or suit in behalf of either of the contracting parties^ who have violated the provisions of the second section, no restriction is iníposed updtf him as' defendant. And bo penalty denounced against his right of defence.
Besides the preamble ingrafted in the said ac't, clearly developes the spirit under which the Legislature acted, the evils that existed, and the remedy intended to be feffected, as well as’ the favorite objects of legislative bounty-.
It clearly points to the protection of the occupant ontip And the provisions in the foregoing as well as the following sections of the statute, were intended to throw around him such guards as would enable him successfully to defend his occupancy front outstanding adversary claims.
We are, therefore, clearly of opinion, that the forfeiture in the second section, was intended as a shield to the possession, and not as a sword; as a weapon of defence, and not of offence'-, as a protection against the remedy sought by & plaintiff, and not as an instrument where; with, to assail the possession of others;
if the second section of the statute be limited, as above construed, there can' be’ no doubt óf its compatibility wJth the' constitution,
. It is- certainly within the legislative competency to- *395 declare what contracts shall be vicious, and to withhold all legal remedy in favor of the parties to such contract, when the recovery is to effectuate the illégal purposes pf the parties to such vicious contracts. If so, the Legislature may, surely, without an infraction of the constitution, throw around a defendant a shield, and provide the mode by which he may pro.tect himself from a recovery founded upon such vicious contract, and defeat the remedy sought by the plaintiff. 2 Dana, 326, Violett v. Violett. And to that end was the legislative enactment directed, and to no other. It will, therefore, not authorize the plaintiff fo invade the possession of the defendant, or justify a recovery in his behalf, as plaintiff, against the defendant, who is now the occupant. The statute is a highly pen§! one, and should be construed to, apply to that class of eases only, to which the legisla-, tive intention, clearly expressed, has been directed, and to no others.
It is; therefore, the opinion of this Court, that the judgment of the Circuit Court be affirmed.