Chief Justice Robertson
delivered the Opinion of the Court-.
In the year 1800, John Dicken, who held a legal title to one undivided third of a tract of land of 1500 acres? which had been granted by this Commonwealth to one Baker and himself—one third to him and two thirds to Baker—sold and conveyed 500 acres thereof, by a designated boundary, to Charles Travis, who had been living thereon, under the said grant, from 1796, and who, having, as may be inferred, made the purchase for the joint benefit of himself and James Jordon, shortly afterwards gave to him (Jordon-) a bond for the title to one half.
Travis and Jordon, both residing on distinct portions of the five hundred acre tract—the former died, in 1803, and his family continued to live where he died until sometime in 1810; in which year, a sheriff having sold their two hundred and fifty acres, under several small executions issued by a, justice of the peace, Jordon became the purchaser, and the sheriff, on the 12th of November, of the same year, conveyed the title to him, for about fifty-five dollars, the amount bid by him at the sale. On the same day, commissioners, appointed by the county court for that purpose, conveyed to him, also, the title to the two hundred and fifty acres on which he had lived—the deed stating that the conveyance was made in consideration of a bond for a title which ho held on the-decedent, Travis. And about that time, the family of Travis having left the land, and one Christopher Dicken having settled upon it, Jordon conveyed to him the whole tract of five hundred acres.
In 1813, Christopher Dicken conveyed to John Dick-en, the 250 acres which had been sold by the sheriff, and on which Travis had lived; but he still continued to oc *562 cupy the entire tract of five hundred acres until his death? during thé'“ pendebcy of this suit. And, in October,-1824, the heirs of Travis conveyed the whole five hundred acres to Remus Griffith. An action of ejectment therefor was brought,- in 1830, against the said Christopher Dicken, in the name of Doe on the demise of Griffith, and also on the demise1 of Travis’ heirs; the notice-in which was served on Dicken, on the 12th ©f October? 1830; and he having appeared, and pleaded the general issue on the usual terms—a verdict' and judgment were rendered in his-favor: to reverse which this appeal is prosecuted.
The action fyc.
The reason why a def’t in eject, may protect him self by showing a title in a stranger superior to thepltf’s, is that it shows the right of entry is in the stranger, and not in the plt’f; consequently; if it appears, that the stranger’s right of entry is tolled by an adverse possession, no matter by whom, the reason fails-, and the def’t can not' then use the stranger’s title as a defence.-
The only questions' presented for revision, are-' such as’ arise from- instructions given, and withheld, by the circuit judge, on the trial.
First. The defendant having exhibited an outstand-’ ing patent in’ the name- of Myers, which included the’ land in contest, and was older than that under which’ the lessor claims, the plaintiff moved the Court to instruct the jury that, if they believed from1 the evidence,that there had been, prior to the institution of this’suit,' more than twenty years continued occupancy, adverse' to the title of Myers, under whose claim there had nev-er been any entry, his patent could not operate as a bar to- the recovery sought in this case. But the court refused to give the instruction, and instructed the jury that, unless Travis and those claiming under him had been? in the adverse possession of the land for at least twenty years prior to the commencement of this suit, Myers’ patent would alone protect the- defendant.
In the opinions thus given the Circuit Court erred> Any possession, by any person, or under any title, that' would toll Myers’ right of entry would be sufficient to show that his patent could not; protect the defendant; because, as an outstanding title may be used as a- shield1 by a defendant in ejectment only on the ground that it-shows that the holder of that patent has a better right of entry than the plaintiff in the action, consequently? it can be of no such avail when there is proof that suchi patentee has no right of entry. And the fact that helms lost his right of entry in consequence of lapse of *563 Sime and continued adverse possession,, cannot prove ¡that the plaintiff in the action has also lost his right of entry.
The champerty act of ’24, making the conveyances to which it applies, void, does not affect the titles of the grantors.
Avendorofland, who, after the conveyance, remains in possession, holds under, not against, his vendee— whose title he is estopped to deny; and if the purchaserhas pre viously sold and conveyed the land, with warranty, his purchase enures to the benefit of those claiming under his prior conveyance; tl^e, possession held, by one whose title has thus passed to them, is their possession, and a sale of the land by them, is not champertous
Second. The Court instructed the jury, that if, at the date of the conveyance from Travis’ heirs to Griffith, Christopher Dicken was in the adverse possession of the land, the title of those heirs, as well as that asserted under their deed to Griffith was void.
This was clearly erroneous. The statute of 1824 against champarty, declares that a champertous deed shall be void; but it does not, as this Court ha,s, more than once, decided, avoid the pre-existent title■ of the grantor.
Third. The Court refused to instruct the jury that, as to the land conveyed by Christopher to John Dicken, the purchase by Griffith should not be deemed to have been champertous and void; and instructed them that, if they believed that this suit is prosecuted by Griffith, or for his benefit, they should find for the defendant—if they, also, believed that, at the date of his deed, Christopher Dicken was in the adverse possession of the land.
That portion of the instruction which was rejected ought to have been givep; because after the conveyance to John Dicken, Christopher Dicken, the vendor, should be deemed to have held under, and not against, the title of John; and was, in fact, estopped to deny that John had good title. And, as John had previously conveyed the same land to Travis, the subsequent conveyance from Christopher enured, by operation of law, to Travis’ heirs in consequence of John’s warranty of title to their ancestor; and consequently, as between Christopher and those heirs, their title was indisputable. And of course, as his possession of that two hundred and fifty acres, should be deemed to be consistent with their title, and not hostile to it, their sale and conveyance to Griffith, were not, as to that portion of the five hundred acres, champertous.
And although it has been decided in the case of Violet vs. Violet, (2 Dana, 326,) that a champertous purchaser of a certain character cannot maintain a suit for his own benefit, in the name of the other part}' to the void con *564 tract, nevertheless, if that decision should be deemed applicable to the purchase in this case, that branch of the last instruction which was given may be seriously questioned, even in its application to any part of the land, because the record exhibits no proof of the fact hypothetic-ally assumed, and it was therefore, irrelevant, and may have been delusive; and, for the reason already suggested, it was altogether erroneous so far as it'applied to the moiety conveyed by Christopher to John Dicken, even if the assumed fact had been indisputably proved.
Where a lessor ivas under disability when his right of entry ac crued, the timé when the disability ceased, & the time which would bar his en try commenced running, are matters of fact and law; and the facts must be determined by the jury. Instructions that 23 years barrfed a lessor, inesuch' case, are erroneous.
Instructions hypothecated upon facts shown not to exist, are erroneous,
A tenant who en terred when the land was vacant, cannot connect his possession with, any previous tenancy which had ceased when he entered.
Fourth. The Court also instructed the jury, that, if they believed that Christopher Dicken and those under whom he claimed had been in the continued possession of the land, adversely to the claim of Travis, for twenty-three years prior to the commencement of this suit, they should find for the defendant.
This too was inappropriate and wrong. Travis died, as before stated, in ‘ i 803—all his heirs being then infants. The instruction is erroneous (1) in assuming when and to what e.xtent the disability of infancy ceased, and when the limitation commenced running. 'These questions depended on facts, as well as law; and those facts should have been left to the jury. (2) In hypothetically assuming a fact as. to adverse possession, that had been, shown not to exist: for it appeared that Dick? en did not take possession until the 14th of October, 1810—notsoon enough,by. two days, to make out twenty years possession before the commencement of this suit; and, as to two hundred and fifty acres, there was no adverse possession until he entered; and as to the other two hundred and fifty acres, it appeared that the possession was vacant before Dicken entered, and therefore, the continuity having been broken, the time of limitation should commence with his oc.cupancy; and even the prior possession of that moity by Jordon, could not have been adverse, in judgment of law; because he evidently held under Travis, and looked to him for a title, and that was not made until about the time when Dick-en took possession. And it may be repeated that, as to the. moiety conveyed by Christopher to John Dicken, *565 there was nó adverse possession from the date of that conveyance, which transferred all the right which Jordon had ever had to that portion of the land, and moreover, operated as an estoppel against Christopher Dick-en.
An ex’on from a justice of the peace does not authorize a ¡^alo ofland: asaleby the sheriff, under such authority, is void.
The record of a county court, appointing a commissioner to make a conyeyanc e,must show a compliant with all the rq. quisitions of the, statute, or th'q title will not be valid. "■
Besides, the sheriff’s deed was void because, the sherif had no authority to sell the land under the execution from the justice of the peace; and it does not, in this case, as now presented, even appear that the conveyance by the commissioners, of the other half of the five hundred acres passed any title to Jordon; for the record does not show that the County Court complied with the requisitions of the statute, which conferred only a special and prescribed authority,
But nevertheless, after the date of this latter deed, the possession of Christopher Dicken, of that two hundred and fifty acres, may have been, in fact, adverse to the claim of Travis, and therefore, as to so much of the land, the conveyance to Griffith may have been, and probably -was, champertous, and therefore void.
Wherefore, for the errors which have been suggested, it is considered that the judgment of the Circuit Court be reversed, and the cause remanded for a new trial.