## Baley, &c. *vs* Deakins, &c.

ERROR TO THE HENRY CIRCUIT.

*Champerty.   Landlord and Tenant.   Possession.*

JUDGE MARSHALL delivered the opinion of the Court.

THIS action of ejectment having been brought on the demise of Rochford and others, who had conveyed to Baley, as well as on the demise of Baley himself, a recov-

EJECTMENT.

Case 44.

Oct 5.

Case stated.

ery on the demise of Baley might be defeated by showing that at the date of the deed to him, the land was held adversely to the title conveyed. But according to the decisions of this Court, in the case of *Cardwell* vs *Sprigg's heirs*, (7 *Dana*, 40–41,) and *Beatty, &c.* vs *Hudson*, (9 *Dana*, 322–3,) a recovery on the demise of the grantors could not be defeated at the trial, on the ground of champerty, "unless the jury should be satisfied that the vendee is prosecuting the suit for his own benefit, with the knowledge and express sanction of the vendor as nominal party." And in the first of these cases, the Court expressly says, that the bare fact that the vendee is prosecuting the suit in the name of the vendor, will not prove that he has authority to do so; nor will proof of such authority alone necessarily prove that the suit is prosecuted for the vendee's benefit.

The question, whether an action is prosecuted for the benefit of a vendee, holding a conveyance since the passage of the statute of 1824, against champerty, is a question for the jury, and evidence to prove it must be such as is admissible against both vendor and vendee, to prevent a recovery on the demise of the vendor.

If then, there had been proof in this case, that Baley was authorised by his vendors, to prosecute the suit for his own benefit, and that it was so prosecuted, which proof must have been by evidence admissible against the vendors, as well as against the vendee, still the question as to these facts, should have been submitted to the jury for their enquiry and judgment, and the Court could not properly have assumed them as true, unless the proof had been of a conclusive character. The bill of exceptions, however, contains no direct evidence upon the subject. Nor is there in any part of the record, to which either the jury or the Judge could properly refer, upon the slightest trace of any step taken, to question or to prove the authority by which the suit was prosecuted in the name of Baley's grantors. A bill of exceptions, taken by the plaintiff on a former trial, does state that the Court admitted evidence of what Baley had said or shown, in response to a rule questioning his authority. But there was no such evidence on the last trial. Nor does the bill of exceptions on the first trial state what the response was. And in the whole record, from beginning to end, we find no entry either of the response or of any rule or motion upon the subjct.

The fact that a deed was made

Unless then, the deed itself to Baley furnishes the evidence of his authority to prosecute the suit for his own

benefit in the name of his vendors, there was no evidence before the jury which would have authorized them to find, and certainly none which authorized the Court to assume that the suit was prosecuted in their names with their knowledge and express sanction for his benefit. But to say that the deed alone was such evidence of authority as to defeat a recovery on the demise of the vendor, on the ground of champerty, if the possession was adverse when the deed was made, would be directly contrary to the principle of the cases cited, and would, in effect, destroy the title of the vendors, by reason of a deed, which the statute declares to be void, and therefore ineffectual to deprive them of title.

The Court therefore erred in instructing the jury to the effect, that if the land was held adversely by the defendants, at the date of the deed or deeds to Baley, they should find for the defendants. To authorize a verdict for the defendants on the ground of champerty, the jury must have found the additional facts that the suit was presecuted by Baley for his own benefit, with the knowledge and express sanction of his vendors. A verdict which would, in effect, deprive them of their title; by barring them from another suit, should have no less a foundation than this.

As the judgment must be reversed for the error which has been noticed, and the evidence with regard to the possession may not be the same on another trial, it is only necessary to state, in general terms, the principles of law which seem to be applicable to the question of adverse possession, as now presented in the case.

If the defendants while in possession, acknowledged that they held the land by lease or permission from the lessors or any of them, either directly to themselves, or indirectly through their father, John Deakins, this is evidence of their holding under the lessors ; and if they did so hold, their subsequently claiming to hold the land as their own, and obtaining patents therefor, while they remained in possession, did not release them from their obligation to restore the possession to the lessors. And the deed to Baley, if made by the lessors, under whom they thus held, within twenty years from the time their

BALEY, &c.
*vs*
DEAKINS, &c.,

to one in whose name a demise is laid in a declaration in ejectment, is not conclusive evidence that the suit is prosecuted for his benefit. Nor would the title of vendor be destroyed by a conveyance which is declared void by the statute.

When a conveyance is made by one not in possession at the date of the deed, to authorize a jury to find for the defendant on the ground that the conveyance is void by the statute vs champerty, they must believe from the evidence, that the land was held adversely at the date of the deed, and that the suit is prosecuted for the vendee with the knowledge and approbation of the vendor.

A conveyance of land held by one as tenant of the vendor, is not against the statute concerning champerty.

adverse claim commenced, and while the grantor might consider that he held under them, was not void under the act against champerty.

If John Deakins, the father of the defendants, entered upon the land as a squatter, making no claim to it as his own, and entering under no title, his possession was not necessarily adverse to the legal title, (that is the oldest patent,) and afterwards, while he thus held, the lessors holding the title, or one of them or their agent, consented to and sanctioned his possession; and he in virtue of that consent and sanction, afterwards claimed to hold under their title as lessor or otherwise, and claimed protection under it as a means of securing the unmolested possession and enjoyment of the land, and of keeping off trespassers and intruders, and if he continued so to hold with the knowledge and by permission of the said lessors or their agent, he was thereby bound to them as tenant to hold the possession for them as long as he continued in possession, though there may have been no actual lease, written or verbal, and no formal agreement that he should hold as tenant. Such an agreement may be implied from circumstances, and if so implied, is as effectual as if made in words. A permission to hold on the one side, and a holding in virtue of that permission on the other, is sufficient to create the relation of landlord and tenant. And if this relation existed in any of these modes, between the lessors and John Deakins, Sr., when by his permission his sons respectively settled on the land which he had so held, they thereby became subject to the same relation and duty as tenants, which had previously appertained to his holding, and could not afterwards, by claiming to hold adversely and obtaining patents to themselves, so change the nature of their possession, as to preclude the lessors from regarding the land as being held under and for them, or from their right of conveying the land, until by lapse of time their adverse claim had matured into a right.

The judgment is reversed, and the cause remanded, for a new trial in conformity with this opinion.

*Morehead & Reed, and Goodloe* for plaintiffs: *McHenry* for defendants.