CASE 32—EQUITY—JULY 2.

## Wall vs. Wayland.

APPEAL FROM PENDLETON CIRCUIT COURT.

The champerty act of 1824 (1 *Stat. Law*, 287) applies to conveyances made by tenants in common and coparceners of their interest in land in possession of their co-tenants, whenever such possession is at the date of such deeds adverse to the grantors therein, and so indicated by specific and unequivocal acts of renunciation of allegiance to their co-tenants, of which there should be clear and satisfactory evidence. There must be some act that would be equivalent to an ouster of those with whom they have been associated in the tenancy.

T. A. MARSHALL, for appellant, cited 4 *B. Mon.*, 480; 5 *Ib.*, 161–2; *Angell on Lim.*, secs. 384 *and* 419 *to* 436; 7 *Wheaton* 121; 4 *Mason*, 334; 4 *Cond. Rep.*, 608.

W. S. RANKIN, for appellee, cited 3 *Howard*, 687.

B. & J. MONROE, on same side, cited 3 *Mar.*, 79; 13 *B. Mon.*, 443; 3 *Mar.*, 72, 73; 13 *B. Mon.*, 43, 44; 18 *Ib.*, 239, 240; 1 *Stat. Law*, 285–6; 3 *J. J. Mar.*, 552; 3 *Dana*, 338; 2 *Ib.*, 274; 1 *B. Mon.*, 370.

SWOPE on same side.

JUDGE STITES DELIVERED THE OPINION OF THE COURT:

The proceedings in the Woodford circuit court in 1813, whereby it was attempted to divest Smith's heirs of their interest in the land in controversy, were clearly invalid, and the deed of the commissioners to Wayland did not operate to divest the children of Mrs. Smith of the inheritance of their mother.

The entry of Wayland upon the land did not occur until 1834, within less than twenty years before the commencement of this suit, and he can therefore derive no protection from the lapse of time.

So that, inasmuch as the deeds from the heirs of Mrs. Smith to the Walls and Wallace are regular, and purport to convey to them all of the interest of the grantors, there can be no doubt of the right of the grantees to a partition of the land, unless the said deeds are champertous, and therefore void under the act of 1824. (1 *Digest*, 285–287.)

They were so held by the circuit court, and relief denied to appellant and those united in interest with him, upon that ground alone, and it is of that judgment that they complain.

. It is said in their behalf, 1st, that the act *supra* was not intended to apply to conveyances made by tenants in common or coparceners of their interest in land in possession of their co-tenants, even though such possession be at the time adverse; and 2d, that if it is applicable, there was in this case no such adverse holding by Wayland against his co-tenants, the Smiths, at the dates of their deeds to appellant, as would authorize the application of the act and render the deeds void.

It seems to us that neither the reason, policy, nor language of the act would justify the exemption of the class of conveyances in question from its operation.

The object of the law was to secure quiet and repose to *bona fide* occupants of land, and to protect them against litigation and disturbance at the hands of those, who, for profit and gain, might acquire outstanding adverse claims from persons not in possession, and thus harass and annoy the occupants; to suppress litigation, and thus promote the prosperity and improvement of the country by adding permanence and security to the titles of real estate.

The construction heretofore given by this court to the act has been a liberal one, with a view to effectuate fully its object and policy.

In *Lillard vs. McGee,* (3 *J. J. Marshall,* 551,) the question was raised whether the act applied to conveyances made by one claiming under the same title under which the occupant in adverse possession held.  .It was decided that such conveyances were within its operation; and that the fact that both parties derived title from a common source did not, whilst one was in possession holding adversely to the other, allow a conveyance by the latter to a third person, during the continuance of such adverse holding.

And in *Thruston vs. Masterton,* (9 *Dana,* 234,) where the provisions of the act were sought to be applied to a conveyance made by one tenant in common of his interest in land whilst the land was in possession of his co-tenant, the court refused to make the application, not, however, upon the ground of the amicable relations incident to the tenancy in common, but because it did not appear that the tenant in possession was claiming to hold adversely to his co-tenants, or had renounced his allegiance to them by any specific or well defined act of renunciation ; thus clearly recognizing the propriety of applying the act to such cases whenever the holding of the co-tenant is adverse, and so indicated by specific and well defined acts of renunciation of allegiance to his co-tenants.

The cases referred to by the counsel in no wise militate against this view.

That of *Chrisman vs. Gregory,* (4 *B. Mon.,* 480,) presented the question whether an occupant entering under the husband's conveyance of his wife's land, could rely on the act against those claiming under the wife.   It was held that he could not, because having entered under the husband, whose right was derived from the wife, his possession was deemed that of the wife, and not adverse.    And in *Baley vs. Deakins,* (5 *Ben. Mon.,* 161,) the relation between the vendor of the land and the occupant was held to be similar to that of landlord and tenant.

It is therefore the opinion of the court that the act *supra* applies as well to deeds made by co-tenants as to other con-

veyances, whenever the tenant in possession at the date of such deeds is holding the land attempted to be conveyed adversely to the rights of the grantors in such deeds.

But before applying the act to such conveyances there should be clear and satisfactory evidence of an adverse holding by the tenant in common. He should by specific and unequivocal acts have renounced his allegiance to his co-tenants. The law presumes his possession to be that of his co-tenants; and to rebut that presumption he should do some act that would be equivalent to an ouster of those with whom he has been associated in the tenancy. Nothing less ought to or will suffice.

The question then arises, is there evidence of such adverse holding by Wayland in this case?

Had there been any well defined acts of renunciation of the rights of the co-tenants? or such an open demonstration of actual adverse holding to them as would amount to an ouster and give notice to persons bargaining for the land that it was in his possession adverse to his co-tenants?

It seems to us that the evidence furnishes but one answer to these inquiries; and that is, that he had by specific acts, well defined, and tantamount to an ouster of his co-tenants, indicated that he held the land, to the full extent of his boundary, adversely to them; and not only so, but that such adverse holding must have been known to appellant when he bought.

It appears that the ten thousand acres conveyed to Wayland had been laid off, and that there was an old boundary between him and the other part of the land embraced in the grant, which boundary was familiar to those who entered and held under Wayland; that as early as 1834 Simpson entered under him, or held by his permission, without any specific boundaries; that after Wayland came to Kentucky, in 1840, he sold several parcels of the land as his own, and allowed persons to enter and hold for *him;* and Daniel proves that in 1846 he entered under Wayland, and remained in actual possession, claiming to hold for him, to the full extent of his boundary, all the unsold lands, up to the period at which he testified; and, moreover, that he was employed by Wayland to keep off trespassers from the lands.

Appellant himself alleges, in his original bill for partition, "that the whole of the ten thousand acres embraced in the said deed to Wayland is in his possession; that he has had it in possession *for a long time*, renting and receiving the profits thereof; and that he refuses to surrender to your orator his just and equitable right to the same; and that said Wayland has given out in speeches that he has a complete title to the whole of said land, &c."

Now, when we consider that this bill was filed about three years after appellant bought from the Smiths, it is difficult, in view of the acts of adverse holding committed by Wayland, to avoid the conclusion that the "long time" referred to in the allegation did embrace the period when the purchase was made, and also that this adverse claim was then known to appellant.

However this may be, enough appears to satisfy us that the adverse holding was of that character to put him and all others on their guard as to the claim, and to render any deed made whilst it continued, champertous and void.

The fact that Wayland had united the Smiths with him as lessors in actions of ejectment to recover portions of the land upon which others had entered adversely to him, presents no obstacle to the conclusion at which we have arrived. He had the right, as the law then stood, to use their names as co-lessors, even if they had actually conveyed to him; and there is no evidence that their names were used except for his own benefit.

Our opinion is that the judgment of the circuit court is fully upheld by the facts of the case; and the same is therefore *affirmed*.