CASE 12—PETITION EQUITY—JANUARY 3.

## Barret, &c, vs. Coburn.

APPEAL FROM CARTER CIRCUIT COURT.

The champerty act applies to conveyances, made by tenants in common of land adversely held by their co-tenants, if there is clear and satisfactory evidence that the

tenant in possession has, by specific and unequivocal acts, renounced his allegiance to his co-tenants. (2 *Met.*, 155.) Stronger evidence is required to show an adverse holding by a tenant in common than by a stranger, but, if the adverse holding is proved, the same rules apply to tenants in common and to strangers.

A possession may be adverse under the statute of limitations without being adverse under the champerty act. (5 *B. Mon.*, 161–2; 7 *Mon.*, 273; 4 *Dana*, 561.) Though there may have been an actually adverse possession, it will not render a conveyance void, where the person in possession is estopped from denying the title of the vendor.

In an action of ejectment each party claimed the exclusive right to the land in contest, but the court adjudged to the plaintiffs an undivided moiety. The sheriff, under color of the writ of *habere facias* for said moiety, turned the defendant out and gave the plaintiffs the sole and exclusive possession of the whole tract. *Held*—that though the possession thus acquired by plaintiffs was held adversely to the defendant it would not render void, under the statute against champerty and maintenance, a conveyance by such defendant of his moiety of the land.

The execution of deeds filed with the petition as the foundation of the plaintiff's action, although they be not authenticated as required by law, is admitted by failure of defendant to deny; and, as to defendants constructively summoned, who do not answer, proof of their execution is unnecessary. (1 *Met.*, 649.)

A defendant, in the absence of a cross-petition against his co-defendant, is not entitled to judgment against the latter.

T. F. HAZELRIGG, for appellants.

TRUMBO & LACY, for appellee.

E. F. DULIN, on same side.

SIMPSON & SCOTT, on same side.

JUDGE BULLITT DELIVERED THE OPINION OF THE COURT:

Howe, Ward and Dawson owned a large tract of land— Howe being entitled to an undivided half thereof, and Ward and Dawson each to an undivided fourth.

James Brumfield took possession of 500 acres of said land, and held the same about fifteen years, claiming title under Dawson and Ward.

In 1844, Howe's heirs obtained a judgment in an action of ejectment for an undivided moiety of said land in Brumfield's possession, and of other tracts in the possession of others, and a writ of *habere facias*, issued thereon, was returned by the sheriff with an endorsement stating that he delivered to Howe's heirs, "on the 29th day of June, 1845, the following places, to-wit: James Brumfield, G. C. Coburn."

Howe's heirs continued in the undisturbed possession of said 500 acres until 1854, when the appellee, Coburn, took posses-

sion of 200 acres thereof, which Barret and wife afterward recovered from him by a writ of forcible entry and detainer, Mrs. Barret being the heir of Howe.

In May, 1854, said Coburn, having the possession of said 200 acres, acquired as above stated, filed a petition in equity against said Barret and wife and said Brumfield's heirs, claiming an undivided moiety of said 500 acres, under alleged purchases in 1853 from said heirs of Brumfield, they being four in number.

Barret and wife, in their answer, denied that Brumfield's heirs had any title to said land, and averred that the alleged conveyances from them to Coburn were void under the act against champerty and maintenance, because defendants then held adverse possession of the land.

Pending the suit, Barret and wife recovered possession of the 200 acres upon which Coburn had entered, as above stated.

The heirs of James Brumfield were Mary Ann, Elijah and William Brumfield, and Mahala wife of Samuel Haney. Coburn filed deeds from Mary Ann and Elijah Brumfield, and from Samuel Haney, who was entitled to a life estate in his wife's interest as tenant by the curtesy. He filed no deed from William Brumfield, who, it appears, died leaving infant children, who were made defendants to the suit of Coburn. Brumfield's heirs were constructively summoned and did not answer.

The court below adjudged that Coburn, as against Howe's heirs, was entitled to have partition of said 500 acres, and appointed a commissioner, with directions to divide the land into two equal parcels, and convey one parcel to Howe's heirs, and to divide the other parcel into four lots and convey one of said lots to each of Brumfield's heirs. From this judgment Barret and wife appealed.

1. The first question is, whether or not the conveyances from Brumfield's heirs to Coburn were void under the act forbidding the conveyance of land in the adverse possession of another. (*Revised Statutes, chap.* 12, *sec.* 2.)

Howe's heirs, when they obtained possession of the land by the action of ejectment, were tenants in common with Brum-

field. There is nothing in the record to rebut the presumption that they entered and held the possession for the joint benefit of themselves and Brumfield, except the return of the sheriff upon the writ of *habere facias* and the statements in Coburn's petition.

As the sheriff was only authorized to place Howe's heirs in possession of the undivided moiety, and as he could not have turned Brumfield out of possession without violating his duty and the law, we think that his return upon the writ might be regarded as showing merely that he had placed Howe's heirs in possession of an undivided moiety of the land. His statement is not sufficiently explicit to require the presumption that he violated his duty by giving to them the sole and exclusive possession. If nothing more appeared in the case than the continued possession of Howe's heirs, as thus acquired, we should have found no difficulty in concluding that their possession was friendly to the Brumfields.

But Coburn alleges in his petition that "Brumfield was turned out of the possession of said land, and Howe placed in possession of the whole of it, when in truth he was only entitled to an undivided half of the same."

It is settled by decisions of this court that the champerty act applies to conveyances made by tenants in common of land adversely held by their co-tenants, if there is clear and satisfactory evidence that the tenant in possession has, by specific and unequivocal acts, renounced his allegiance to his co-tenants. (*Wall vs. Wayland*, 2 *Met.*, 155.) Stronger evidence is required to show an adverse holding by a tenant in common than by a stranger, but if the adverse holding is proved the same rules apply to tenants in common and to strangers. In the case before us the allegations of the petition show an unequivocal renunciation of Brumfield's title by Howe's heirs, the former having been turned out and the latter placed in possession of the whole land. It seems impossible to reconcile these statements with the idea that Howe's heirs entered and held the possession as Brumfield's co-tenants. But conceding that the possession of Howe's heirs was adverse, that Brumfield's heirs could at any time have maintained ejectment, and that

the possession of the former, if continued for twenty years, would have barred the right of entry of the latter, yet, considering the manner in which the possession was acquired, we are not prepared to admit that this case is within the letter and policy of the champerty act.

·It is clear that possession may be adverse under the act of limitations, without being adverse under the champerty act. · (*Bailey vs. Deakins*, 5 B. Mon., 161–2; *Castleman vs. Combs, &c.*, 7 Mon., 273; *Griffith vs. Dicken*, 4 Dana, 561.) Thus, though twenty years adverse possession by one who entered as tenant will bar the lessor's right of entry, such possession within twenty years will not render a conveyance by the lessor void under the champerty act. (*Bailey, &c. vs. Deakins, &c., supra;*) because the lessee, until he has had twenty years adverse possession cannot question the lessor's right of entry.

· So, where A. delivered the possession of land to B. in accordance with a decree, and the decree was afterward reversed, whereby A. became entitled to the possession, but B. and C., to whom B. had conveyed the land, refused to surrender to A.; A. then obtained a conveyance from D., who held the legal title, and sued B. and C. in ejectment; and it was held that D.'s conveyance to A. was not void under the champerty act; and the court said : "The statute is designed to embrace the case of claimants on one side and possessors on the other, of strangers in estate, or such possessors as can, without violating the principles of law or conscience, hold adversely to the claimant." (*Castleman vs. Combs, &c.*, 7 Mon., 276–7.)

Where A. remained in the possession of land for thirteen years after selling it to B., and during such possession B. conveyed to C.; in ejectment by C. against A. it was held, that B.'s conveyance to C. was not void under the champerty act, because A. was estopped from denying B.'s title, and it should be presumed that his possession was consistent therewith. (*Griffith vs. Dicken*, 4 Dana, 563.) It is clear, from the comments of the court upon the instructions in that case, that there was evidence conducing to prove that B.'s title had been .renounced by A. before the conveyance to C. Hence the case stands upon the ground that, though there may have been an

actually adverse possession, yet it should not avoid B.'s conveyance, because A. was estopped from denying his title.

Upon the same ground stands the case of *Jones vs. Chiles*, in which it was held, that a conveyance of land by a vendor, who had obtained a judgment in ejectment, was not void under the champerty act, though the land remained in the possession of the defendants, the writ of *habere facias* not having been executed. (2 *Dana*, 35.) There the possession was clearly adverse, but the court said : "We think the deed to Jones, executed in 1826, is not void under the act of 1824 relative to champerty and maintenance. The object of that act was to prevent speculations in pretended titles, whereby purchasers were enabled to harass occupants with law suits. Neither the letter nor policy of the act embraces a case where the vendor has already litigated the title with the occupants and obtained a verdict and judgment in his favor. A title thus settled by the judgment of a court of justice cannot, with propriety, be called a *"pretended title."*

In our opinion the grounds upon which those cases stand are broad enough for the case before us. In the ejectment suit between Howe's heirs and Brumfield, each claimed the exclusive right to the 500 acres, but the court adjudged to Howe's heirs an undivided moiety thereof. According to the pleadings the sheriff, under color of the writ of *habere facias* for said moiety, turned Brumfield out and gave to Howe's heirs the sole and exclusive possession. If Brumfield had made a motion in proper time, the court would have restored to him the possession of his undivided moiety. Upon such a motion, or in an action of ejectment by Brumfield, it would have been against good conscience and sound policy to allow Howe's heirs to question his right upon any pretext whatever. They are estopped from denying his title, and forbidden to hold adversely, not by their relation to him as tenants in common, but by the adjudication settling their rights, and by the manner in which they acquired possession under that judgment. Hence, though Howe's heirs held adversely, yet as they were forbidden to do so by the considerations just mentioned, and were estopped from questioning the title of Brumfield's heirs, our

conclusion, in accordance with the authorities above cited, is, that the possession was not such as to render the conveyances to Coburn void under the statute against champerty and maintenance.

The facts of this case, touching the manner in which the possession was acquired, relieve it from the operation of the rule in *Wall vs. Wayland.*

2. Said conveyances to Coburn were not authenticated as required by law. But Barret and wife admitted, by failing to deny, their execution; and, under *section* 439 *of the Code*, proof of their execution, so far as Brumfield's heirs are concerned, was unnecessary. (*Gill vs. Johnson's adm'r,* 1 *Met.,* 649.)

Coburn, therefore, showed title to one-fourth of the 500 acres in fee, and to one-eighth thereof during the life of Samuel Haney. To this extent Coburn was entitled to a judgment, and the court below, in directing Coburn's land to be conveyed to the Brumfields, erred to his prejudice (unless he consented thereto, as may be assumed for the purposes of this appeal,) and not to the prejudice of the appellants.

3. But in our opinion the court erred to the prejudice of appellants in ordering any thing more than Samuel Haney's life estate to be conveyed to his children, and in ordering the interest of William Brumfield's children to be conveyed to them.

Coburn did not sue for partition between him and Brumfield's heirs. He did not recognize them as having a common interest with him, but claimed their interest under alleged conveyances from them. We do not perceive, therefore, upon what principle the court could adjudge to those heirs the land belonging to them in the absence of a cross-petition against Barret and wife.

Wherefore the judgment is *reversed,* and the cause remanded for further proceedings not inconsistent with this opinion.

Each party must pay his own costs in this court.