Otis B. Little, Plaintiff in Error, *v.* T. G. Quinn & Co., Defendants in Error.

L. C. & Co. and Q. & Co. exchanged notes for the accommodation of the former, who negotiated in bank Q. & Co.'s note. When due it was renewed. Before its maturity, L. C. & Co. dissolved partnership, L. retiring, and the remaining members of the firm formed a new partnership under the style of C. & Bro., and assumed the liabilities of L. C. & Co. When the renewed note fell due, it was again partly renewed by C. & Bro.'s note, indorsed by Q. & Co., and the balance paid in cash by C. & Bro., all without L.'s assent This last note was protested for non-payment, C. & Bro. having become insolvent. Through all these transactions, Q. & Co. retained the original note of L. C. & Co. as security. In a suit by Q. & Co. against L. C. & Co. upon their original note under section 500 of the Code (2 S. & C. 1095):

*Held,* That L., the retiring partner, can not claim that the change of securities in the hands of the bank operates as a release of him, on the ground of a payment, or of an extension without his consent, of the original debt in the hands of Q. & Co. sued on.

*Held,* That such a change of securities did not suspend the right of action, which Q. & Co. have on the original debt of L. C. & Co. to them.

Error to General Term by Otis B. Little to a judgment rendered against him and others. The case appears fully in the opinion.

*I. J. Miller,* for plaintiffs.

*H. M. Cist* and *George Hoadly,* for Little.

Hagans, J. It was claimed that Otis B. Little, William Carson, and Robert Carson, partners as Little, Carson & Co., are indebted to the defendants in error in the sum of $1,500 and interest upon a promissory note for $3,000, dated November 1, 1868, payable two months after date, at Kinney & Co.'s bank, to the order of the defendants in error. The note is credited with $1,500. It is agreed that

Little, Carson & Co. gave Quinn & Co. this note as a collateral security, so-called in the pleadings, for their accommodation note, dated November 4, 1868, of like tenor and amount, to be used in the business of Little, Carson & Co. It was in fact an exchange of notes for their accommodation, both being original notes. The note which Little, Carson & Co. got, they discounted in bank, and when it became due, they neglected to pay it, and did not pay their own note which the defendants in error held. The defendants in error, at the request of Little, Carson & Co., and to save their own credit, made their promissory note for $1,000 payable to Little, Carson & Co., and also indorsed Little, Carson & Co.'s note for $2,000, with which they raised the money to take up Quinn & Co.'s note which they had discounted, Quinn & Co. still holding by agreement the $3,000 note of Little, Carson & Co., which they had obtained as collateral security, as they call it, for the payment of the newly made notes of $1,000 and $2,000 respectively. These two new notes were dated January 6, 1869, and were due in thirty days. Before these notes became due the firm of Little, Carson & Co. was dissolved, Little going out of the firm, and William and Robert Carson still keeping the business, under the firm name of Carson & Bro., and assuming the partnership liabilities. When the notes last given for $1,000 and $2,000 respectively became due, they were not paid, and the defendants in error, at the request of Carson & Bro., indorsed Carson & Bro.'s note for $1,500, with the proceeds of which and $1,500 in cash raised by them besides, Carson & Bro. took up the due notes. Thereupon the defendants in error indorsed the note sued on with a credit of $1,500—the cash raised by Carson & Bro.—and, as they say, held it as security for the payment of the new note for $1,500 of Carson & Bro., by agreement with them, of all which Little had notice. It appeared that Little made ineffectual efforts to procure the surrender of the note sued on. When this new note for $1,500 became due it was protested for non-payment, and the holders look to the defendants in

error for payment, "for the reason," the petition alleges, "that Carson & Bro. have become insolvent." And the defendants in error ask judgment against Little, Carson & Co., that they secure the defendants in error from loss in the premises.

The defendants in error, as will be seen, have not paid the $1,500 note, but have brought their action under section 500 of the Code (2 S. & C. 1095); and the judge below rendered judgment in their favor, against Little, Carson & Co., for the balance due accordingly; to which Little excepted and now prosecutes this writ of error.

Ordinarily, the giving a new note in renewal of an old one is equivalent to the payment of the latter, unless the presumption of payment is controlled by evidence of a contrary intent. *Cornwall* v. *Gould*, 4 Pick. 444; *Huse* v. *Alexander*, 2 Met. 157; and see *Emley* v. *Lye*, 15 East, 7, where the authorities are collected. The claim of Little here is, that when Carson & Bro. gave the renewal note for $1,500 and raised $1,500 in cash, and so took up the preceding debt of Little, Carson & Co., it operated as a *payment* of Little, Carson & Co.'s obligation to the defendants in error. No doubt the defendants in error knew that Little had gone out of the firm when they indorsed Carson & Bro.'s note, but we do not think this affects the question.

In the early case of *Horsey* v. *Heath et al.*, 5 Ohio, 354, the court say, "Though partnerships may be terminated, yet partnership responsibilities continue until all are discharged. The proposition of the respondents would be a great convenience to debtors, as it would put it in their own power, without the consent of creditors, to discharge their obligations by a mere dissolution of the partnership." And further, on p. 357, "When the identity of the debt is ascertained, it is now settled that a new change of the evidence of it will not affect the liability of the real parties in a court of chancery." No *new debt* is created. Again, the change of the security effected by giving the note of Carson & Bro. in part renewal of the precedent debt, did not stop

or prevent the defendants in error, for an instant, from beginning such a suit as this upon the note sued on here. They could have brought it at any time, and Little can not complain that there was an extension of time for payment by the creditor of the original liability, for such a complaint is unfounded as againt the defendants in error.

Here the original transaction was for the benefit of Little, Carson & Co. The defendants in error were only accommodation indorsers or makers in the subsequent renewals. They held on through them all to the original note of Little, Carson & Co., sued on, according to the original agreement. There was no agreement to postpone the remedy which the defendants in error had upon the original debt as against Little, Carson & Co., and any delay in doing so was in the hope that Carson & Bro. would pay the debt for which Little was liable, and which was for his benefit. If the defendants in error had agreed to delay or postpone their remedy against Carson & Bro., or if it could be claimed that there had been any delay to the prejudice of Little, there might be ground for his defense. Nothing of the sort appears in the testimony. Thus the case seems to be closely assimilated to *Bedford* v. *Deakin et al.*, 2, Starkie, 178, where Lord Ellenborough held, that where the plaintiff held a bill of exchange of three partners, and after their dissolution and the bankruptcy of one of the partners took the notes of one of them as collateral security, without the knowledge of the other partners and retained the original security in his hands, this did not discharge the other partners. And this was upon the principle that nothing had been done to the prejudice of the other partners; that no remedies had been postponed on the original debt, and the new securities were taken on the express condition that they should not affect the original security he held and had never given up.

Again, it is said that as between the defendants in error and Little, there existed the relation of principal and surety immediately upon the dissolution, and that the defendants in error, who had knowledge of the facts, by indorsing

the $1,500 note of Carson & Bro., extended thereby the time of payment of the debt and so released Little. But a sufficient answer to all these arguments may be found in the fact already stated, that no remedy on the note sued on which the defendants in error had was suspended. The case might well be tested by supposing that the defendants in error had raised the money on any other note than Carson & Bro.'s. No remedy in favor of Quinn & Co., against Little, Carson & Co., would thereby have been suspended. As between the parties and the creditor, Little, Carson & Co. were principals and the defendants in error sureties, so we do not see that the doctrine of principal and surety as stated applies in this case. The defendants in error did not take the new note, nor was it in any way substituted for the note sued on; but the creditor of the firm of Little, Carson & Co., with whom the former notes had been negotiated, took the note of the firm of Carson & Bro. The taking of the new note of Carson & Bro. probably operated to release Little as between him and the creditor, but that is not the question here.

The judgment will be affirmed.