## Wyatt, et al. v. Touvelle, et al.

(Decided October 31, 1919.)

### Appeal from Clay Circuit Court.

Mortgages—Unrecorded Trust Agreement—Notice.—Grantor conveyed land to his son for a valuable consideration, but remained in possession after the conveyance. A judgment and order of sale was secured by the administrator of a mortgagee of the son and grantor brought suit to restrain the administrator and the court's commissioner from enforcing the judgment and order of sale, alleging a trust contract executed by the son at the time of the conveyance which he fraudulently failed to record, and that grantor's possession after conveyance was sufficient to put the mortgagee upon notice of said trust. Held, that grantor's possession is presumed not inconsistent with the record title of his grantee, and conclusively so as to the mortgagee of his grantee, who is a bona fide purchaser without notice, in the absence of a showing that mortgagee actually knew of the character of the possession of the grantor or the existence of the unrecorded trust agreement.

RAWLINGS & WRIGHT and COBB & COLLINS for appellants.

H. F. FRAMER and FAULKNER & FAULKNER for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

On March 30, 1906, I. C. Wyatt and wife conveyed to their son, U. S. Wyatt, by deed of general warranty, for the recited consideration of $700.00 cash in hand paid, 276 acres of land in Clay county, Kentucky. The next day, March 31, 1906, the son executed a mortgage on this same land to the East Bernstadt Banking Company for

$756.00, which he admittedly used to discharge mortgage liens placed thereon by his father long before the conveyance to the son, and to foreclose which proceedings were then pending.

Shortly before October 25, 1909, the son applied to Mrs. Susan M. Touvelle at her home in Madison county for a loan of $1,060.00 on the land, which she made to him after investigating the records and discovering that, as represented by him, he held the fee simple title to the land, encumbered only by his mortgage to the East Bernstadt Banking Company of $756.00 of date March 31, 1906, to satisfy which he told her he required the sum borrowed of her. To secure this loan U. S. Wyatt and his wife, on October 25, 1909, executed and delivered to Mrs. Touvelle a mortgage on the land, which she promptly recorded, and the bank released its mortgage. The notes for the $1,060.00 and the interest thereon from the several due dates to the maturity of the loan not having been satisfied, Mrs. Touvelle's administrator, she having died in the meantime, instituted an action in the Clay circuit court against U. S. Wyatt and his wife and obtained therein a judgment for the amount of the indebtedness and an order of sale of a sufficiency of the land to satisfy same. After the master commissioner, pursuant to that judgment, had advertised the land for sale, and on April 4, 1913, I. C. Wyatt and his wife instituted this action to require U. S. Wyatt to reconvey the land to them and to restrain Mrs. Touvelle's administrator and the court's commissioner from enforcing the judgment and order of sale against the land, alleging in substance that the deed to U. S. Wyatt was executed only for the purpose of enabling him, by selling the timber on the land, to discharge the indebtedness of the grantors against the land; that U. S. Wyatt had fraudulently failed to have recorded a contract which he had executed at the same time they executed the deed to him by which he obligated himself to reconvey the land to them after he had discharged the outstanding indebtedness against it; that they had at all times since the execution of the deed to U. S. Wyatt remained in the open, notorious and exclusive adverse possession of the land, and that no part of the money obtained by U. S. Wyatt from Mrs. Touvelle was used by him in the discharge of their indebtedness against the land; that he received for timber sold off of the land and from a lease of minerals therein a sum more than sufficient to discharge their indebtedness against the land;

that at the time of the execution of the deed to their son the father, I. C. Wyatt, was old and feeble in both mind and body. I. C. Wyatt having died before the issues were completed the action was revived in the name of his real representatives, who, by amendment, alleged that he was insane at the time of the execution of the deed to U. S. Wyatt. U. S. Wyatt and Mrs. Touvelle's administrator answered separately denying all of these allegations of fact and both pleaded affirmatively that the Touvelle mortgage was but a renewal of the I. C. Wyatt indebtedness, and in addition Mrs. Touvelle's administrator pleaded that she was a *bona fide* mortgagee for value and without notice, which affirmative pleas were traversed by appropriate pleadings.

After proof had been taken and the cause submitted upon all issues the court entered a judgment dismissing plaintiff's petition insofar as it sought to cancel Mrs. Touvelle's mortgage and to restrain the enforcement against the land of her judgment and order of sale, reciting therein: "But this judgment shall in nowise affect issues arising upon the pleadings as to the defendants U. S. Wyatt and Annie Wyatt," from which judgment this appeal is prosecuted.

As the chancellor did not pass upon the issues formed between the plaintiffs and the defendant U. S. Wyatt but expressly reserved those questions it is clear he sustained plaintiff's plea that she was a *bona fide* mortgagee for value and without notice, as this is the only issue not also formed between plaintiffs and defendant U. S. Wyatt. Hence we shall consider only this question and such evidence as could have a bearing thereon.

It is established by the evidence without contradiction that the grantors, after the conveyance, continued to live upon the land and got the rents either direct from the tenants or through the grantee from such portions as were rented out, and by the weight of the evidence, that the grantor, I. C. Wyatt, when he executed the deed was mentally competent to do so, and that it was not a nullity, whether subject or not to the alleged secret trust. That Mrs. Touvelle loaned U. S. Wyatt $1,060.00 upon the faith of his record title, and without actual notice of the alleged trust agreement is thoroughly established; but it is insisted that the continued occupancy by the grantors, after the execution of the deed to their son, was sufficient to put the mortgagee upon an inquiry, which by the exercise of due diligence would have ap-

prised her of the alleged trust and plaintiff's equity in the land, and that she is therefore chargeable with notice thereof and not entitled to the favorable consideration due a *bona fide* mortgagee. It is unquestionably the universally recognized rule that possession is such a fact, though *de hors* the record, as presses its attention upon a purchaser or mortgagee of the record title holder so as to imply notice or necessitate an inquiry that would lead to knowledge of the character of such possession and any equities in the possessor, except where the possessor is the grantor. Under such state of case the authorities are divided as to whether the general rule is applicable or his possession will be presumed as amicable and not adverse to the title he has vested absolutely in his vendee, and conclusively so as to purchasers and mortgagees of his grantee who have not actual knowledge of his continued possession.

This whole question of possession of land as notice of title is exhaustively treated and the authorities annotated in a note in 13 L. R. A. (N. S.) pages 49 to 140, and beginning at page 115 is a discussion of the effect of grantor's possession after conveyance and a statement, with citation of authorities of the two divergent rules with respect to the grantor's continued possession, which is in part as follows:

"1. Rule that possession is notice.

"Some of the cases apply the general rule that possession of land is notice of the right and title of the possessor, to a retention of possession by a vendor after conveyance, holding that, where a grantor of real estate remains in possession thereof after the execution of the deed, a purchaser from the grantee is charged with notice of the right, title, or interest of such occupant."

"2. Rule that vendor's possession is not inconsistent with record title.

"Probably a majority of the cases have taken the position, with reference to matters of this class, that the possession of a vendor of land after conveyance is not inconsistent with the title which he has conveyed; and that therefore one of the elements of constructive notice is lacking.

"These cases hold that the general rule that possession of land is notice to a purchaser of the possessor's title does not apply to a vendor remaining in possession after giving a full record deed, so as to require a purchaser from his grantee to inquire whether he had reserved any

interest in the land conveyed, since, so far as the purchaser is concerned, the vendor's deed is conclusive, he having declared thereby that he makes no reservation; and he is estopped from setting up any secret arrangement by which his grant is impaired.''

In this jurisdiction the latter rule, that vendor's possession is not inconsistent with the record title, has been observed with one exception. In Griffin v. Dicken, 4 Dana, 561, it was held that where the vendor of real estate remained in possession his possession was deemed to be consistent with and not hostile to the title which he had conveyed. So also in Snowden v. McKinney, 7 B. M. 258, Barrett v. Coburn, 3 Met. 510, Bean v. Vanable, 87 S. W. 263, and Behrens v. Crawford, 108 S. W. 288. In the last named case, upon facts entirely analogous and almost identical with those before us, it was held that where a recorded deed of general warranty upon its face absolutely and unqualifiedly conveyed certain land to the grantor's son, purchasers of one of the lots after the son's death from his successors in interest for a valuable consideration were entitled to rely upon the record title and hence were *bona fide* purchasers, not chargeable with notice of the existence of a parol reservation in favor of the original grantor in the absence of a showing that they actually knew of the existence of such a reservation, and the mere fact that the property was occupied by tenants of the original grantor at the time of their purchase was insufficient to put them upon notice. By these cases, and especially the last, we feel that this court is committed to the rule that the vendor's possession is not inconsistent with the record title and that he is estopped from setting up any secret arrangement by which his grant is impaired against purchasers and mortgagees of the grantee in the absence of a showing that they actually knew of the character of the possession of the grantor or the existence of the unrecorded parol trust agreement. The only case seemingly out of the line with these cases is Hopkins v. Garrard, 7 B. M. 312, where the general rule is stated and applied to a vendor who had retained possession, but without seemingly noticing that he was within an exception to the general rule under several former decisions of this court. The Garrard case does not cite any authority nor has it ever been cited in any case in this court, although it was reported more than seventy years ago, and being out of

harmony with the several cases above cited, it, rather than the several other cases, should be dsregarded and overruled.

Wherefore the judgment is affirmed.