Chief Justice Robertson
delivered the Opinion of the Court. — ' Judge Nicholas dissenting.
During the pendency of a traverse which McBrayer had taken to an inquisition against him, on a warrant for forcible entry and detainer, Wash, the traversee, sold and conveyed to his sons, the land in controversy, and which was, at the date of the conveyance, in the adversary possession of the traversor.
On the hearing of the traverse, the circuit court decided, that the champerty act of 1824, applied to the case, and that, therefore, Wash could not recover, by suit, the possession of the land.
Whether or not the circuit court erred in that opinion, is the only question which this court will now consider.
The first section of the act of 1824, amending “the champerty law ” (session acts, page 444) declares, that a contract for selling land whilst in the adversary possession of a stranger to the contract, shall be void, and that no right of action shall arise, from such a contract, to either party to it.
The second section invalidates contracts for “ carrying on” suits upon pretended titles to land, in consideration of a part of the land, and declares that any claim or title, which was the subject oí such prohibited contract, should be forfeited, and that neither party should have any cause of action on any such pretended title.
The third section provides, that any person, who was in the adversary possession of the land at the date of any sale or contract prohibited by the first and second sec *566 tions, may “plead the sale or purchase of any pretended right or title in violation of the first section, or any contract or agreement made in violation of the second section, in bar of any suit, or claim founded thereonThis latter section does not extend of alter the import or operation of the first section. It only enables the occupant to plead the contract of sale (prohibited by the first section) in bar of any suit founded thereon — that is, on such illegal contract. It does not apply to a suit brought by' the vendor on his own preexisting title, which had not been invalidated or affected by the void contract of sale made in violation of the first section.
Every conveyance, or contract for the sale of land in the adverse possession of a stranger to the contract, is void, (by the .cham-perty act of’24) and no suit can be maintained upon a title acquired under such circumstan ces. But the title of the vendor is not forfeited by such vain attempt to transfer it ; nor is his right of action,upon his preexisting title, thereby destroyed. [See the Dissent of Judge Nicholas, page 569.]
*566 The third section, it is true, authorizes a defendant in possession, when sued on a title, or a claim founded on a contract prohibited by either the first or second section, to file a bill of discovery; and hence it is argued, that the third section should be construed as intending to allow a defendant to plead a sale in violation of the first section, in bar of a suit upon the title of the vendor; because, when the suit is brought on the void title of the purchaser, his deed will shew every fact that a discovery on oath could expose. This argument, though plausible, is far from being conclusive. The true date of the contract is the decisive test of its legality, or illegality; and, to evade the statute, the deed could be easily antedated, so as to appear to have been executed prior to the adverse occupancy. When such an artifice is suspected, the defendant may compel the parties to disclose, on oath, the true date; and, in some other respects, a defendant may be benefitted by the oath of the plaintiff, even though the third section applies only tó the prohibited sale or contract.
It is but reasonable to presume, that the first section is as comprehensive as the legislature intended that it should be. It would not be proper, or.consistent, therefore, to give such an interpretation to the third section, enacted only to enforce the first and second, as would extend the effect of those two denunciatory sections, unless such an incongruous interpretation could not he avoided without a palpable perversion of the language of the third section. And it appears to us, that, even *567 according to its true grammatical import, the third section is not inconsistent with the first section, and does not invalidate the title of the vendor; it does not, we think, apply to his right at all, but only to the title of his ven-dee. As already suggested, it applies to the “ contract;’’’ but even if it apply to the title, or to a suit founded on the title, which was sold in viojation of the first section, it should be understood to mean the title claimed, or asserted, by the purchaser, only. It would then mean onlv that the defendant may plead the prohibited sale in bar of a suit founded on the purchased title, which is void ; that is, the title attempted to he derived from the illegal contract. Any other construction, would pervert the act of 1824, into an engine of injustice and oppression, as a single case will exemplify : — A, living in Fayette, explores a tract of land, of whicli he is the only owner, in Livingston county, and ascertains that it is unoccupied. He returns home, and, in perfect good faith, mortgages the land to B, to secure a debt which he owes him. Two months afterwards, he pays the debt, and the lien is released ; but, in the mean time, only one day prior to the date of the mortgage, an intruder, without any pretence of title, settled on the land, and boldly claims to hold it adversely to the title of A. Must A give up the land to the trespasser ? He must do so, if the third section of the act of 1824, apply to him. The legislature never could have intended such injustice and absurdity. Such a consequence is not within the motives or policy of the act of 1824.
But it may be asked, why the second section denounces a forfeiture of the claim of both parties to any contract which it inhibits, unless a similar denunciation was intended as to both parties to contracts forbidden by the first section. Two answers may be given to this question. First : The second section applies to both parties expressly and undeniably, The first as clearly applies to the purchaser only; and ita lex scripta should satisfy the querist. Second: But, if it be necessary to find a motive for the discrimination, a sufficient one is quite obvious. Such contracts as those denounced by the second section are signally odious and pestiferous. They *568 generate litigation, and encourage injustice and unprincipled speculation. The aim of both parties is the same. They both know that the title which is the subject of their champertous traffic, is questioned and is doubtful, perhaps desperate — desperate means may be necessary to sustain it. The temptation to make such contracts is strong and cannot be easily overcome. And, therefore, it was deemed necessary to subject to forfeiture the claim of both parties, who, for purposes of speculation and pestilent litigation, conspired to violate a salutary law.
But the bona ficle sale of a title is of a far different character ; and the policy of prohibiting it at all has been doubted, as the history of legislation on that subject will clearly demonstrate. And to invalidate the sale, is as much as policy could require, or justify. The parties only lose a bargain, good or bad, to the one or the other ; and, as they may both act in perfect good faith, without a suspicion that they are violating any law, a forfeiture of their bargain is as severe a penalty as can be necessary or proper.
The second section declares a forfeiture. The first only says that the contract shall be void. Why this difference in the phraseology ? Because the legislature intended, that the title should be forfeited in the one case, and only intended that, in the other, the contract should be void.
The statute has declared only, that the title of the purchaser or alienee should be invalid in' consequence of a sale or alienation of land contrary to the first section.
We cannot give such an interpretation to the act of 1824, as to deprive the bona fide vendor of his right, or as to withhold from him, all remedy for enforcing that right against a stranger who may have no title whatever to the land.
It does not appear, that Wash is prosecuting this suit for the benefit of his alienees, or that it is a, suit in his name for their exclusive benefit ; and it is not necessary to intimate what might have been the effect of proof that this is a suit for the use of the alienees, and not for the use of Wash himself.
Dissent, by 'J^£e
Wherefore, it is the opinion of a majority of the court, that Wash did not divest himself of his preexistent title by his abortive attempt to transfer it to others, or lose his right to maintain a suit on his own. subsisting legal title.
Wherefore, the judgment is reversed, and the cause remanded for a new trial.
Judge Nicholas,
dissenting- from the construction given to the statute in question, and the decision of the majority of the Court, read the following Opinion :—
The first section of the champerty act of 1824, declares, that no person shall sell or purchase by deed, bond, or executory contract, any pretended title to land, whilst in the adversary possession of another, makes void every such deed, bond or contract, and says that no right of action shall accrue thereunder.
The second section makes it unlawful to contract to recover land adversarily possessed, in consideration to have part or profit thereof; forfeits the title of the parties to such contract, and all right to maintain any suit on such pretended title.
The third section authorizes the occupant to u shew or plead the sale, or purchase of any pretended title, in violation of the first section, or any contract in violation of the second section, in bar of any suit founded thereon and authorizes “ the defendant in any such suit, 1 o bring the parties to the sale or purchase mentioned in the first section, or to a contract in violation of the second section, before the court, and compel a discovery of any such sale or contract.”
My understanding of the import of the third section, is, that it was framed for the double purpose of enabling the occupant to defend himself, by shewing that the plaintiff had sold the land in contest-, and the better to enable him to make out that defence, or the one afforded him by the second section, of authorizing him to compel a discovery of the sale or champertous contract. It is, however, contended, that it was not intended to make a sale of the title, within the meaning of the first section, a bar to a suit on that title, but merely a bar to a suit in *570 the name of the vendee, leaving unimpaired the right to prosecute a suit in the name of the vendor. The solution of the difficulty depends upon the question, whether the word thereon, in tiie third section, refers to the title sold, or to the contract of sale.
The more material words, upon which the true construction depends, when placed in- juxta-position, read thus — u may shew the sale, or purchase, of any title, in bar of any suit founded thereon.” Founded on what ? The common and casual reader would answer, “ on the title.” The rules of grammar say the same. The word title is the next antecedent, and by all rules of construction, must be taken to be the thing referred to, unless the otherwise plain sense and meaning is thereby marred. Here you do not mar the sense by sticking to the next antecedent. On the contrary, if you skip the word title, and make the reference apply to sale or purchase, you do mar the sense and the only substantial meaning to be extracted from the entire section. To a legal mind, no words could convey less sense or meaning, than an authority to the defendant to shew a sale or purchase in. bar of a suit founded on the sale or purchase. It would be equivalent to a legislative declaration, after pronouncing pertain contracts illegal and void, that a defendant, when sued upon such contract, might shew the contract? in bar of the action. Nothing could be more idle or unmeaning.
The reference of the word thereon, with regard to the second section, is obviously and necessarily to the title, about which the contract for carrying on any suit, was to be made. It would be absurd in the extreme to sup^ pose the legislature meant to authorize the occupant to defend himself against a suit founded on the champer-tous contract. Such contract could never be the basis of a suit against him. The reference with regard to the second, being so clearly to the title, and* not to the contract, it lies not within the powers of construction, to make the reference to the first section, apply to the contract, and not to the title. The only mention of the title in the third section, is where it is spoken of in connection with matters embraced in the first section, and it *571 there we have to go in order to find what it is the word thereon refers to-, in regard to matters embraced in the second section. When the reference is thus to the same set of words as to both sections, how is it possible so to sever and disconnect tire meaning of the word thereon., as to give it one sense with regard to the first, and another with regard to the second. To find what is meant with regard to the second section, we have to ascertain what is said with regard to the first. By this process, we ascertain that it was the title, and not the champertous contract, upon which the act contemplates the suit against the occupant was to be founded. How is it possible, then, to suppose that the legislature did not also mean the same, with regard to the first section? The word title stands in more immediate connection with what is said of the first section, and does not give signification thereto, yet it gives signification to what is said of the second section, though it stands disconnected therefrom. Fair construction surely never produced ruch a result.
In the second section, rt is said, the parties to the champertous contract shall forfeit “all right to maintain any suit upon such pretended title.” When language so very similar is used in the next section, it is difficult to believe it was not used in the same sense.
How unapt and inappropriate is the language used to convey the idea contended for!. We do not say that a suit for land against an adversary occupant is founded on a sale or purchase,' but upon the title bought or sold.
It is a sound rule of construction, to give some effect to every word of an act, if it be-practicable to do so. Much rather, therefore, should effect of some sort be given to an entire section. This rule must be totally disregarded, if the word thereon is made, in its application to cases under the first section, to apply merely to the conveyance, and not to the title. For that will render the whole, or nearly the whole, of the entire third section perfectly idle and inoperative. It gives no additional efficacy whatever to the second section;, for that, in legislative contemplation, must have been as fully sufficient of itself to bar any suit on the title, without the *572 aid of the third section, as it is with it. On the contrary, the first section standing alone would merely avoid the conveyance or contract, leaving the title in the grantor or vendor, still to be enforced in his name; and by permitting the third section to refer to the title, and constitute a bar to a suit founded on the title, then effect is given to the third section, and it becomes operative to a substantial purpose. But if its reference is to the conveyance alone, and not to the title, it is inoperative. It surely could answer no purpose for the legislature solemnly to declare, that the occupant might protect himself against a recovery under the conveyance, when it had already said, in the first section, that the conveyance should be void, and pass no title. Besides, how absurd to authorize him to shew that in his defence, which his adversary,- if he succeeded at all, would be compelled to shew for him. If the plaintiff claims under such a conveyance, he will necessarily have to shew it, in order to recover. What need then to say the defendant may shew it in his defence? If such were the meaning-of the legislature, why enable the defendant to compel a discovery on oath, ccof any such sale or contract?” The word sale has exclusive application to the first section. Why should he seek a discovery of the sale, when its whole effect after discovery, would be nothing more 'than the manifestation of a fact, which it would be indispensable for the vendee himself to prove, in order to effect a recovery? It cannot fairly be presumed of the legislature, that it would authorize a discovery for the purpose of enabling the occupant to shew that he was in possession of the land at the time of sale. That is a matter, about which he must be presumed at all times to possess the most abundant means of proof, without the necessity of a discovery from his adversary. Neither can it be presumed that the discovery was authorized for the purpose of proving the true date of the sale, in order to prevent the post-dating of a deed merely. That is a circumstance too trivial in itself — an evasion too easy of detection in other modes, to suppose the legislature would devote an entire section to it, and especially one of the texture of this. Besides, if that *573 Were the sole object of the discovery, it has no application, and would have no bearing whatever upon a chainpertous contract. This construction would restrict the sales to be discovered, to those that are evidenced by deed merely, whereas the sale referred to, and as spoken of in the first section, is by any mode, whether by deed or executory contract.
The construction contended for, does, therefore, strip the entire third section of all practical meaning and effect. It literally subserves no substantial purpose whatever. We cannot thus tamper with the canons of construction, in order to obviate the evils likely to flow from a supposed lack of sound policy in a legislative enactment.' If the rule as prescribed be too rigid and extensive in its operation, it is for the legislature to relax and curtail it. We make rather a free use of the powers of construction, when we curtail it — when we make a plain legislative enactment say literally nothing.' I believe the legislature understood the import of the language used, and intended what it does literally import. It was meant to effect a thorough suppression of the trafficking in pretended titles to land in adversary possession. The evil was one under which the country had long suffered. They intended to cut it up by the roots.The mere avoiding the sale and conveyance was deemed not a sufficient protection against the traffic. It was thought that champertors would still buy, and carry on suits in the names of their vendors, and trust to their honor for making a conveyance after the recovery was had. It was to prevent this, and to afford the discovery, as to cases under both the first and second sections, that the third was added. The remedy may, and probably will, go farther than the evil intended to be guarded against. But if not permitted to operate at all, it will leave much of the evil unguarded against. As between the two effects, I do not conceive we have any election. But it is believed that a sale of land would rarely occur without the parties being apprized of its being in adverse possession. As to the case of a mortgage, it is believed not to be such a sale as was contemplated by the third section. It speaks of sales and pur *574 chases, not of conveyances. And as property in adverse, possession is allowed to be sold under execution, it would do no violence to the general principles of our code to permit the mortgagee to foreclose and sell. Where a mortgage was resorted to as a mere device for evasion, it would of course be treated as a sale within the act.
If the construction contended for by me, were adopted by the court., it would remain to be determined, whether the legislature had the power of suppressing the evil in the manner that I suppose it contemplated. I am inclined to think it had such power, and (hat this case does not fall within the principles insisted on by me, in the case of Gaines vs. Buford, [ante, 502.] But as a majority of the court has given a different construction to the act, a discussion of that question would be inappropriate and unprofitable. Not being able to concur in the construction adopted by a majority of the court, and the question being one of much importance, I felt it my duty to give the reasons for my dissent..