JUDGE PETERS
delivered the opinion op the court.
In his petition appellant, Joseph Swager, alleges that on the 2d of January, 1837, Edmond S. Lampton conveyed to John B. Black and W. T. Pettet a number of lots in Lampton’s addition to the city of Louisville, among which was a lot known on the map of said addition as lot No. 64; that on-the 17th of June, 1839, said Pettet conveyed his interest in said lot to said Black, and on the 3d of April, 1850, said Black conveyed the same lot to him; that Thos. F. Crutchfield and wife obtained *413 a judgment in the suit of themselves against E. M. Stone, &c., in the Louisville Chancery Court, on the 24th of September, 1869, against plaintiff and others, determining the rights of the parties to the land in controversy, and on the 23d of November, 1869, a decree in said suit was rendered allotting to said Fanny Crutchfield lot No. 64, and in May, 1870, a final judgment was rendered in favor of said Fanny M; Crutchfield against plaintiff for said lot No. 64, from which judgment plaintiff prosecuted an appeal to the Court of Appeals with supersedeas, and the judgment and proceedings in said action were stayed; that the case-was heard in the Court of Appeals, and the judgment of the court below was affirmed on the 26th of April, 1872; that on the 8th of May, 1872, the mandate of the Court of Appeals was entered, and plaintiff then moved the court for permission and offered to file an amended answer setting up and pleading, in bar of the right of said Fanny M. Crutchfield to recover said lot, the fact that she and her husband had during the pendency of said suit sold said lot to Charles Obst, in violation of the law against champerty, but the court refused to permit him to file said amended answer; and after referring to the several deeds through which he claimed said lot, and making them a part of his petition, he alleges that from 1850, when he purchased said lot, he had held the same adversely to every other claim or title, paid the taxes, both state and city, and all assessments for improvements of streets and sidewalks adjacent thereto; that on the 2d of May, 1870, he was in the possession of said lot, claiming it adverse to all others, and on that day said Crutchfield and wife sold and conveyed the same to said Obst for about twenty-three hundred dollars, one third cash and the residue in annual installments, for which two notes were executed, which notes were assigned to Henning & Speed, on which they have brought suit to coerce payment by an enforcement of the vendor’s lien. But Obst resists the payment of the money on the ground that *414 plaintiff was in the adverse possession of the lot at the time he made the purchase; that by the second section of the champerty statute of this state all sales and conveyances of lands in the adverse possession of another person at the time of the sale or conveyance are null and void, and under the 4th section the plaintiff may plead and rely upon the sale and conveyance aforesaid by said Crutchfield in bar of the action against him for said lot; that he had no knowledge of said sale and conveyance until some time in the latter part of the year 1871, when the case against him was pending in the Court of Appeals, and that he could not set up and rely upon said champertous sale and conveyance of said lot until after the determination of the suit in the last-named court, and he therefore insists that he has the right to file this petition in the nature of a bill of review, or under sections 373, 581, and 801 of the Code of Practice, and prays that a new trial may be awarded him, and on final hearing that the action of Crutchfield against him for the recovery of said lot may be dismissed.
To the petition a demurrer was sustained, and the only question presented by this record is, are the facts alleged sufficient to entitle appellant to the relief sought?
Section 2 of the statute against champerty and maintenance provides “that all sales or conveyances, including those made under execution, of any lands, or the pretended right or title to the same, of which any other person at the time of such sale, contract, or conveyance has adverse possession, shall be null and void,” and the residue of the section contains exceptions to the operation of the part quoted, and has no application to this case.
Section 4 provides that the person in the adverse possession according to the provisions of the second and third sections of this chapter, his personal representatives, heirs, or assigns, or the person under whom such occupant claims or holds, his persona] representatives, heirs, or assigns, may give in evidence *415 under the general issue, or may plead the sale or purchase of any pretended right or title in violation of the second section of this chapter, or any contract or agreement made in violation of the third section of this chapter, in bar of any suit or action against them to recover the possession or title to the land so held. (1 Revised Statutes, 1 Stanton, 226-7.)
The first section of the act of 1824 against champerty declares that no person shall sell, or purchase by deed of conveyance or bond or executory contract, any pretended title or right to land of which any other person than such vendor or vendee shall at the time of such sale or purchase have possession adverse to the right or title so sold or purchased; that every conveyance, deed, bond, or contract entered into in violation of said section shall be void, and no right of action shall accrue to either party thereunder.
The third section of the act authorizes the person in the adverse possession of the land according to the provisions of the first and second sections of said act to plead such sales, contracts, and conveyances in bar of any action or suit or claim founded thereon, and.permits the person in possession sued for the land to bring the parties to contracts therein prohibited before the court, and compel a discovery on oath of any such sale or contract. (1 M. & B. 285-6.)
These two enactments, so far as they relate to sales and conveyances of lands adversely held at the time, and provide a remedy for the person or persons in possession, are substantially the same; and this court has in several cases decided a similar question to the one arising on this record under the statute of 1824 (supra), and by adjudications of this court since the adoption of the Revised Statutes the former adjudications are regarded as applicable to the statute now in force, and as authoritative in the interpretation thereof.
In Jones v. Chiles (2 Dana, 25) the court said the deed to Jones, executed in 1826, is not void under the act of 1824 *416 relative to champerty and maintenance. The object of that act was to prevent speculations in “pretended” titles, whereby purchasers were enabled to harass occupants with law-suits. Neither the letter nor policy of the act embraces a ease where the vendor has already litigated the title with the occupants and obtained a verdict and judgment in his favor, and which have been acquiesced in so long that they are irreversible by the prosecution of a writ of error. A. title thus settled by a court of justice can not with propriety be called a “pretended title.”
Nor • can we perceive any motive or object which could have influenced the legislature to prohibit the sale and conveyance of a tract of land recovered by the final and irreversible judgment of the court until after the tenants shall have been dispossessed by the execution of the writ of habere facias.
And even if it be admitted that the deed from Crutchfield to Obst came within the letter of the second section of the act against champerty, the voidness of the deed would leave the title in the grantors, and would present no obstacle to the further prosecution of the suit, as was decided in Chiles v. Conley’s heirs (9 Dana, 385); and the court in that case said, “We are of opinion that the policy of the statute does not extend to a case in which neither the commencement nor the prosecution nor the result of the suit can be traced to the sale and deed, which are impeached as violative of its letter, and in which such sale and deed have had no tendency to produce or continue the litigation.” The sale to Obst did not instigate nor continue the litigation; but there can not be a doubt that it would have been carried on precisely as it was if the sale had never been made. And in giving construction to the champerty act now in force the court cited Jones v. Chiles (supra) as authority. (Barret, &c. v. Coburn, 3 Met. 511.)
*417 • It is alleged in the petition in this case that in September, 1869, in a suit for that purpose, a decree was rendered settling the rights of the parties, and by a supplemental decree the lot No. 64 in controversy was allotted to Mrs. Crutchfield. The judgment establishing the right of Mrs. Crutchfield was final; and although it was not, as in the case referred to in Jones v. Chiles, liable to reversal, because the appeal or writ of error was barred by time, still it was “irreversible” on its own intrinsic merits, and because there was no error in it, as was subsequently demonstrated; and the reason for refusing the effect to the deed contended for in this case is as potent as in the case cited.
The title sold to Obst was not a “pretended” title; it had been adjudged a valid and superior title, before he bought, by a court of competent jurisdiction, and that judgment was afterward affirmed by this court.
The judgment therefore must be affirmed.