## Travis, et al. v. Bruce.

(Decided November 24, 1916.)

### Appeal from Lyon Circuit Court.

1. **Vendor and Purchaser—Constructive Possession.**—Where a vendor conveys a fee simple title to lands to a vendee, the vendee is vested with the constructive possession of the lands, which the law vests in the rightful owner of lands and from which he can not be ousted, except by an actual possession of the lands by another.

2. **Adverse Possession—Champerty—Limitation of Actions.**—The adverse possession mentioned in the statutes against champerty has the same elements as an adverse possession, which if continued long enough, will create title under the statute of limitations, but where one is in possession and is estopped to deny the title of the rightful owner, the possession, although it may be adverse, is not an adverse possession under the champerty statutes.

3. **Vendor and Purchaser—Possession—Estoppel.**—Where a vendor remains in possession after a sale and conveyance of the land he occupies, his possession is considered to be consistent with the title he has made, which he is estopped to deny.

4. **Adverse Possession—Actual Possession—Notice.**—The rightful owner in the constructive possession of lands is not ousted by an actual possession of another, until such other makes an open demonstration of actual, adverse occupancy of the land of such a character as amounts to a notice to the owner of the adverse character of the holding, and such as would reasonably put a purchaser upon notice of the hostile claim.

NEWTON W. UTLEY and UTLEY & UTLEY for appellants.

HODGES & JAMES for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

On February 15th, 1911, John Boyd executed and delivered to his brother, James Boyd, a deed, by which he conveyed to him the fee simple title to about nine-tenths of an acre of land, in Lyon county, near Eddy-ville. Elizabeth, the wife of John Boyd, did not join in the deed, and thus did not part with her potential right of dower in the land embraced by the deed. After the execution and delivery of the deed, John Boyd died, testate. His last will and testament was probated in May, 1911. By the provisions of the will, the testator devised all of his property to his surviving widow, Elizabeth Boyd, the sole devisee in the will, who died in 1915, and

the lands, devised to her by the will of her husband, passed by the laws of descent to her two daughters, Bessie Travis and Marie Boyd, who are the appellants in this action.

The small portion of land, which John Boyd conveyed to James Boyd, was unimproved woodland, and was situated alongside of a roadway and just within the boundary line of a farm which he owned and which was bounded at that point by the roadway. The entire farm, including the portion sold and conveyed to James Boyd, was enclosed, at the time of the sale by a fence, which extended around the entire farm. There were dwelling houses upon the farm, which were occupied by tenants. The farm was divided by cross-fences into fields, and the one, in which the land conveyed to James Boyd, by the deed, was situated, was covered with trees and bushes and was used for pasture land. There were other fields suitable for and used for cultivation. The deed to James Boyd described the small piece of land conveyed by it, by metes and bounds, and as being a part of a tract of land, which had been conveyed to John Boyd by John Stacker. There were no improvements upon the land which was conveyed by the deed, except an open pen, which had been used for slaughtering animals, presumably hogs.

John Boyd died a short time after the execution and delivery of the deed to James Boyd, but, during his life, nor that of Elizabeth Boyd, the record does not indicate that James Boyd performed any act, which indicated ownership or dominion over the small piece of land, which had been conveyed to him by John Boyd. Neither, does the record disclose that John Boyd, after executing the deed; or Elizabeth Boyd, the devisee under his will; or the appellants, as her heirs, ever asserted any title to the land embraced by the deed, or exercised any dominion over it, or used or appropriated it in any way. It seems to have remained enclosed in the woodland pasture with the other lands, which John Boyd did not sell, and which passed to his widow under his will and to appellants by inheritance from their mother, and as it was, when it was sold and conveyed to James Boyd, and until after the death of Elizabeth Boyd, but it is not clear, whether or not, it was so enclosed, at the time, it was conveyed to appellee, T. A. Bruce, by James Boyd, as Marie Boyd, one of the appellants, testifies to having re-

quested appellee to enclose it with a fence, but it does not appear when or who removed the fence, if it was ever removed; but we do not deem it to be material, whether or not, it was still enclosed in the woodland, at the time of the sale of it, to appellee, for a decision of the question before us. The pen, which was situated, at some time or other, upon the land, had been removed about one year before the trial of this case, but it does not appear, who it was that removed it, or for what purpose it was removed, or whether it had ever been used, or who it was that placed the pen there, or whether it was there at the time of the sale to James Boyd, or whether he placed it, there, afterward.

On the 18th day of March, 1915, James Boyd sold and conveyed the small piece of land, for the alleged consideration of one hundred dollars, to appellee, who went upon the land and cut down some small bushes and one larger tree, which were growing upon it, and removed a portion of the tree. The appellants then instituted this action, and in their petition claimed that they were the owners and in the actual possession of the land, and that appellee had without right entered upon the land and committed the alleged trespasses above mentioned, and was threatening to continue to trespass thereon, and asked that he be enjoined from so doing or from any further interference with their possession.

The appellee, by answer, denied the ownership or possession of the land by appellants, and alleged ownership in himself, through the deeds, from James Boyd to him, and from John Boyd to James Boyd. His claim to ownership of the land was controverted by a reply. The trial court adjudged that the appellee had manifested his right to do the acts complained of and that the petition be dismissed. The appellants excepted to the judgment and have appealed.

James Boyd was not made a party to the suit and hence the validity of the deed from John Boyd to him, under which he held the land, was not assailed, and the record does not contain any intimation that the deed was other than a valid deed and conveyed the title of the land from John Boyd to him. If the title of James Boyd to the land in controversy was valid, the deed by which, he conveyed it to appellee, vests in him a good title to the land, unless the conveyance was contrary to law, and one of which the appellants have a right to com-

plain. No adjudication as to the validity of the deed from John Boyd to James Boyd was had or was sought in the action. The ground relied upon by appellants, to defeat the title of appellee to the land, is the claim, that they were in the adverse possession of the land at the time of the sale and conveyance by James Boyd to appellee, and hence the sale and conveyance to appellee was champertous and void, and that he cannot rely upon it as a defense to the action. If the sale and conveyance from James Boyd to appellee is void on account of the statutes against champerty, this does not render the title of James Boyd void, as upon rescission of the contract for a sale of the land as between him and appellee, he would be left with a valid title, and appellants could not have a cause of action against any one for trespassing upon the lands of James Boyd. Wash v. McBrayer, 1 Dana 565; Redman v. Sanders, 2 Dana 69; Griffith v. Dicken, 4 Dana 561; Beaty v. Hudson, 9 Dana 322; Chiles v. Conley, 9 Dana 385; Ring v. Gray, 6 B. M. 368; Swager v. Crutchfield, 9 Bush 411; Crowley v. Vaughn, 11 Bush 517; Jones v. Brentlinger, i. d., Vaughn v. Brentlinger, i. d.; Luen v. Wilson, 85 Ky. 503. The appellants do not claim to own the land in controversy, in any way, except as the heirs of Elizabeth Boyd, and through her as the devisee under the will of John Boyd. The will of John Boyd did not devise the land, in controversy, to Elizabeth Boyd. It only undertook to devise to her the property owned by him at the time of his death, and he had previously sold and conveyed this land to James Boyd and was not the owner of it at his death. If the title by James Boyd was a good and valid title, the appellants cannot complain of a champertous transaction between him and appellee, as they would have no interest in it. If the sale was void, and such that appellee could not rely upon for a defense, it would still not avail the appellants anything, as they would have no cause of action, because of trespasses upon the lands, to which they have neither title, nor possession.

It is, however, earnestly insisted, that appellee having no title to the land in controversy, because of the champertous nature of the deed, under which he claims, that he has no right to disturb the possession of appellants to the land. They claim to have been, at the time of the sale and conveyance from James Boyd to appellee, in the adverse possession of the land, and that

under the provisions of Section 211, Ky. Statutes, a contract to prosecute a suit for the recovery of lands in the adverse possession of another for the whole or a part of the land, or for the whole or any part of the profits thereof, is void, and that the parties, to any such contract, forfeit all claim to the land under such pretended right or title, and that such claim, right or title, vests in the Commonwealth and inures to the benefit of the occupant of the lands, without office found. Section 210, Ky. Statutes, provides that all sales and conveyances of land in the adverse possession of another are void. It is not necessary to determine the meaning of the provisions of Section 211, *supra,* or whether same has application to the facts of this case, as under either section of the statutes mentioned, before the sale and conveyance are void, as provided in Section 210, *supra,* or the contract mentioned in Section 211, *supra,* is void, or the forfeiture therein provided for can be invoked, the lands, in controversy, must have been in the adverse possession of persons, who invoke the provisions of those statutes, at the time of the sale and conveyance or at the time of the making of the contract, respectively. Hence, when it is determined, whether or not appellants were in the adverse possession of the lands at the time of the sale and conveyance by James Boyd to appellee, their right to relief is determined. It is an old rule of the common law, that where lands are not in the actual possession of some one, the constructive possession—that is the possession which the law vests in the rightful owner because of his title and right of entry upon the lands, is in the one, who has a title to the lands. The rightful owner of lands having such possession, he cannot be ousted from it by anything except an actual possession taken by another. Jones v. McCauley, 2 Duvall 14; Church v. Halley, 10 R. 447. In addition to the rule of the common law, it is provided by Section 491, Ky. Statutes: "All deeds of bargain and sale, deeds to stand seized to use, deeds of release and deeds of trust shall be held to vest the possession of the grantor in the grantee to the extent of the estate intended to be conveyed." John Boyd was in possession of the land in controversy. His deed to James Boyd shows that he intended to vest the latter with a fee simple title. Hence, upon the delivery of that deed, the vendor parted with his possession of the land and it vested in the vendee.

The vendee could not be ousted from this constructive possession, except by an actual possession taken by some one. The fact, that the land was enclosed under a common fence along with the lands of the vendor, and after him, with the same lands, when they passed to his devisee and from her to appellants, would not by and of that fact, become in the adverse possession of the vendee nor any of his privies. The possession mentioned in the statutes against champerty has the same elements, which the possession, that is necessary under the statutes of limitation to create title, has, except that in some instances a possession, which is sufficient under the statutes of limitation to create title, if continued long enough, is not sufficient to make void a conveyance under the champerty statutes. In either case, the possession must be an actual and adverse possession; "a visible exercise of exclusive authority under a claim of right," and "so open and notorious that the ousted claimant may have notice thereby of the fact, that he is disseized—that another claims and is occupying the premises to the detriment of other titles." Interstate Investment Co. v. Bailey, 29 R. 468, 93 S. W. 578, and many others. Hence, before the constructive possession of the land, with which John Boyd vested James Boyd, was ousted, it was necessary for John Boyd or those claiming his adjoining lands under him, to take actual possession of the land in controversy, by openly exercising exclusive authority over it, and by giving James Boyd actual notice of the hostile character of the holding, or else performing such acts of authority over it, that he would thereby have notice that his possession had been ousted and the claimants were holding it in hostility to his title. This John Boyd was estopped to do, as will be hereafter shown. As said before, the evidence does not disclose upon the part of John Boyd, his devisee or appellants, that any of them claimed to own the land or asserted title to it, or notified James Boyd of their hostile holding or performed any visible act of authority or dominion over the land, that would indicate, that they either claimed it or were holding it, as their own, until the appellants alleged ownership of it in their petition, but in their evidence they do not assert any claim or ownership of the land, except under the will of their father, which did not affect the ownership of the land in controversy.

If it could be said, as claimed, that the land was in the possession of the appellants, their mother and father, after the conveyance of it to James Boyd, because it was enclosed with their lands in a common field, their possession, yet, could not have been an adverse one, as applied to the facts of this case, under the statutes against champerty. As said in Perry v. Eagle Coal Co., 170 Ky. 830:

"It may be said as true, that the possession, which is necessary to make a deed of conveyance to a tract of land void under the statutes against champerty, has the same elements as an adverse possession, which is necessary to create title under the statute of limitations, but a possession sufficient under the statute of limitations is in many instances not a sufficient adverse possession to make void a conveyance of land under the statute against champerty. If a party is in possession of land, although his holding may be adverse, but if he is estopped to deny the title of the actual owner, it is not such an adverse holding as will affect the conveyance made by the real owner of the land. Bailey v. Deakins, 5 B. M. 161; Castleman v. Combs, etc., 7 Mon. 273; Griffith v. Dicken, 4 Dana 561; Barrett v. Coburn, 3 Met. 510."

In Griffith v. Dicken, *supra,* it was said, that a vendor of land, who, after a conveyance, remains in possession, holds under and not against his vendee, whose title he is estopped to deny. The same principle is held in Snowden v. McKinney, 7 B. M. 258. Where a vendor remains in possession of the land after he has made a sale of it, it is presumed that his possession is consistent with the deed made by him, and not adverse to the vendee. Behrens v. Crawford, 32 R. 1281; Rudd v. Monarch, 17 R. 893, 32 S. W. 1083; Carpenter v. Carpenter, 8 Bush 283. John Boyd was estopped to deny the title of his vendee. The appellants are the privies of John Boyd and succeeded to only such possession of the lands as he had, and before they could be heard to assert an adverse holding to the land in controversy, it was necessary for them to have made an open demonstration of actual, adverse occupancy of the land, of such a character as would have amounted to a notice to James Boyd of the adverse character of their holding, and such as would have reasonably put a purchaser upon notice of the fact of their hostile claim. Mayes v. Kenton, 23 R. 1052; Shaw v. Revel, 21 R. 348; Ross v. Veech, 22 R. 578. Hence the appellants

have never had any possession of the land, which was adverse to James Boyd.

It is insisted for appellants that appellee had notice that they were claiming and holding the land hostile to the title of James Boyd before his purchase, but this is denied by appellee, and the evidence, in our opinion, does not fairly sustain the contention.

The judgment is therefore affirmed.